IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

**KENNETH KENNER**                                                                                                        **PLAINTIFF**

VS.                                  Case No. 04-CV-4021

**DOMTAR INDUSTRIES, INC.**                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This lawsuit involves Plaintiff Kenneth Kenner's allegations of religious discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.) by Defendant Domtar Industries, Inc. ("Domtar"). Before the Court is Domtar's Motion for Summary Judgment. (Doc. 18). Kenner has responded. (Doc. 29). The Court finds this motion ripe for consideration, and upon consideration, for the following reasons, finds the motion should be denied.

**I.**      **Background**

Kenner has worked at Domtar's Ashdown Mill since 1973. In 1992, Kenner became a preacher. Kenner preached at different churches, and for the past two years Kenner has preached at the New Town Missionary Baptist Church in Texarkana, Texas. Kenner's Church is open Sunday mornings and evenings and has a Wednesday night service.

At Domtar, Kenner's job title is super will sheet operator, and Kenner operates machine number 17 along with three other operators. Kenner's work schedule is divided into four rotating shifts, three on and one off. The day shift runs from 7:00a.m. to 3:00p.m., the swing shift runs from 3:00p.m. to 11:00p.m., the graveyard shift runs from 11:00p.m. to 7:00a.m, and during the fourth shift Kenner is off work. Since 1973, Kenner's work schedule has required him to work on Sundays.

Kenner is a member of the Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 5-1327 (the "Union") at the Domtar facility, and the collective

bargaining agreement between the Union and Domtar allows Kenner to swap shifts with his co-workers.

Specifically, Article 14 of the Collective Bargaining Agreement, titled "Shift Swaps," provides:

> Tour workers may swap shifts for justifiable reasons in any one (1) work week with the approval of their respective supervisors. Partial shift swaps (two or more hours) will be allowed for compelling reasons providing they are arranged prior to the end of the employee's preceding shift. The swapping of shifts for the employee's convenience will not result in overtime charges for the Company. In the event a request for a shift swap is denied, the employee may immediately appeal to the Department Head. When employees swap shifts they will assume the seniority status, for all purposes, of the employee they swap with. Employees who have waived promotion will be governed by the provisions of Article 12, Section E, paragraph 1d.

After Kenner became a preacher, he swapped his Sunday shifts with Teddy Ayers, a co-worker. When a co-worker swaps shifts with Kenner, Domtar has to pay that person the same wages it pays Kenner, because Kenner's salary and seniority status is the highest of anyone in the department. In 2002, Ayers retired from Domtar, and Kenner was unable to find another employee to swap shifts with him. Kenner refuses to work on Sunday mornings, so he accumulates penalty points pursuant to Domtar's Absence/Tardiness/Leave Early (ATL) Policy. When Kenner refuses to work on Sundays, and he is unable to find a co-worker willing to substitute or swap shifts for him, the employees working the shifts before and after Kenner must work 12-hour shifts, or one of the employees must agree to work a 16-hour shift.

On July 2, 2002, Kenner filed a grievance with the Union with respect to his accumulating points pursuant to the ATL policy for missing his Sunday shifts. This grievance was signed by Union representative J.R. Staggers (Dated July 4, 2002) and Domtar representative Bryan Mangus (Dated August 21, 2002).

In an inter-office memorandum, dated September 16, 2002, Mark White, Domtar's Converting General Manager, states that Kenner and Staggers disputed the fact that he was given two ATL points earlier in 2002 for being absent from work on Sunday to be a pastor at his Church. The memorandum continues:

It was Mr. Kenner's understanding that the company's position to allow individuals to have time off in order to perform their duties as a pastor would not be cause for points on the ATL system. Upon investigation, it was learned that at some time in the past the company had allowed individuals time off without penalty in order to fulfill their duties as pastors. Unfortunately, the climate and conditions have changed in regards to attendance and/or excessive overtime at the facility, which has placed an undue hardship on the company.

The memorandum describes an August 16, 2002, meeting with Staggers, Kenner and Bryan Mangus where they discussed removing the points and verbal warning from Kenner's record and "[explaining] to Mr. Kenner that after September 1, 2002 he will no longer have the exemption as previously stated, and any absence from that point forward will fall under the guidelines of the ATL policy."

On October 9, 2002, Kenner filed a charge of religious discrimination with the EEOC (Charge Number: 251-2003-00051). In this charge he checked the box marked "Religion," under the heading "Cause of Discrimination Based On," and stated that the date the discrimination last took place was September 9, 2002.

By a letter dated September 15, 2003, signed by Katharine Kores, acting district director, the EEOC determined that reasonable cause existed as to whether Kenner was denied a religious accommodation of being off on Sunday morning to attend church. The EEOC letter stated:

> The evidence further indicates that [Domtar] did not attempt to modify workplace practices, policies and/or procedures to accommodate [Kenner's] sincerely held religious belief. [Domtar] did nothing more beyond what was already in existence for any employee. When charging Party has difficulty in finding a replacement to swap with him, [Domtar] has made no further attempts to accommodate his religious belief.

The EEOC invited Domtar and Kenner to join with the EEOC in a collective effort toward resolution of the charges, which was unsuccessful. See Pl.'s Ex. G. "Notice of Right to Sue (Conciliation Failure).

Kenner filed this lawsuit on February 9, 2004, alleging religious discrimination in violation of Title VII. Domtar has moved for summary judgment in its favor for all of Kenner's claims.

## II. Discussion

The standard of review for a motion for summary judgment is established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Krenik v. County of Le Sueur, 47 F.3d 953 (8th Cir. 1995).

The Supreme Court has issued the following guidelines to help determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial . . . whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Agristor Leasing v. Farrow, 826 F.2d 372 (8th Cir. 1987); Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund, 800 F.2d 742, 746 (8th Cir. 1986).

The burden of proof is on the moving party to set forth the basis of its motion. Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002), citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. Id., citing Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The Eight Circuit Court of Appeals, in Scheer Const. Co. v. Greater Huron Development Corp., 700 F.2d 463, 465 (8th Cir. 1983), quoting Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981), in a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth specific facts that raise a genuine issue of fact for trial.

If a plaintiff has the burden of proof at trial on a claim and the defendant has filed a motion for summary judgment, the plaintiff must identify admissible evidence sufficient to make

a submissible case at trial. Celotex, at 323-24. If the plaintiff cannot identify such facts, the defendant is entitled to judgment as a matter of law. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990), quoting Celotex, 477 U.S. at 322.

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248.

Title VII prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of religious discrimination under Title VII a plaintiff must plead and prove that (1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he informed his employer about the conflict; and (3) he suffered an adverse employment action. Cruzan v. Special School District, 294 F.3d 981, 983 (8th Cir. 2003).

Domtar argues Kenner cannot show that he has a bona fide belief that working on Sundays is contrary to his religious faith. Kenner refuses to work on Sunday, testifying that Sunday is his Sabbath and he should keep it holy. Whether or not Kenner's belief is bona fide will turn on a credibility assessment, so summary judgment is inappropriate as to this part of the test. See E.E.O.C. v. Union Independiente Dr La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002)(holding that the finding of the sincerity of a religious belief will depend on the factfinder's assessment of the employee's credibility and should be reserved for the factfinder at trial, not for the court at summary judgment).

Once Kenner establishes a prima facie case, Domtar has the burden of showing either (a) it undertook an accommodation that was reasonable; or (b) no accommodation was possible without producing an undue hardship. See 42 U.S.C. § 2000e(j) . If an employer reasonably

accommodates an employee's religious observance, the statutory inquiry ends and the employer need not show that the employee's proposed accommodations would cause an undue hardship. Wilson v. U.S. West Communications, 58 F.3d 1337, 1342 (8th Cir. 1995). An employer fulfills its Title VII obligation when it offers a single reasonable accommodation. Ansonia Board of Education v. Philbrook, 479 U.S. 60, 68-69 (1986). Because "reasonableness" and "undue hardship" are a relative terms, the determination of when the reasonable accommodation requirement has been met, and the circumstances under which a particular accommodation may cause undue hardship, must be made in the particular factual context of each case. Mann v. Frank, 216 F.Supp.2d 940 (E.D. Mo. 2002).

The first step in the Court's inquiry is whether Domtar reasonably accommodated Kenner's religious beliefs. Domtar argues that it (though the collective bargaining agreement) allowed Kenner to swap his Sunday shifts with his co-workers and this is a reasonable accommodation. Kenner argues that Domtar has done nothing to accommodate him and has unilaterally prevented any reasonable accommodation and has denied him any accommodation.

While it is true that many courts have found a shift-swap system a reasonable accommodation[1], this Court is persuaded by Rice v. U.S.F. Holland, Inc., - - - F.Supp.2d - - - -, 2005 WL 3682617 (N.D. Ga. 2005), which affirmed the magistrate's denial of the Defendant's motion for summary judgment in a Title VII religious discrimination case, finding the employer could not rely on existence of a shift-swap policy when employer took no effort in response to

---

[1] See Beadle v. Hillsborough County Sheriff's Dept., 29 F.3d 589 (11th Cir. 1994)(holding neutral rotating shift system and its authorization of shift swaps within system represented reasonable accommodation to plaintiff's religious beliefs under Title VII). See also Smith v. Pyro Mining Co., 827 F.2d 1081, 1088 (6th Cir. 1987)(holding that as long as the employee had no religious objection against arranging his own schedule swap with other employees, it would be a sufficient reasonable accommodation for the employer simply to be amendable to such a swap without requiring the employer itself actively to solicit other employees to make such a swap). Merely granting employees permission to find volunteers to swap shifts, however, does not definitively constitute reasonable accommodation as a matter of law in all cases. Pyro Mining, 827 F.2d at 1088.

employee's notification of the conflict between his work schedule and his Sabbath. Rice found that the existence of a neutral seniority system, in and of itself, does not establish as a matter of law a reasonable accommodation under Title VII. Rice noted:

> An employer, for example, who regularly allowed employees to take leave or swap shifts when non-religious conflict arose, could fire an employee immediately upon learning that his religious beliefs created a conflict with his work schedule. As long as the company's employees obtained their schedules via a neutral senority system, the employer would not even be required to give the religious employee the opportunity to take leave or seek other arrangements, but could simply terminate him on the spot. According to this line of argument, the employer would not need to make any effort to accommodate the employee's religious beliefs, even if an accommodation would cause no hardship whatsoever to the employer, because the senority system itself would satisfy the accommodation requirement. This result is obviously incompatible with Title VII's requirement that employers reasonably accommodate to an employee's religious observance or practice.

Rice, - - - F.Supp.2d at - - - - , 2005 WL 3682617.

The evidence before the court at this summary judgment stage does not show that Domtar made any effort to accommodate Kenner's beliefs after it learned of his religious conflict.[2] The evidence shows that Kenner filed a union grievance relating to the ATL points he was accruing for his Sunday absences. The record is undeveloped as to Domtar's action after the grievance was filed to attempt to accommodate Kenner's beliefs within its existing system, or its consideration of alternative accommodations, so a summary judgment determination that Domtar reasonably accommodated Kenner's beliefs is inappropriate.

Domtar can still be entitled to summary judgment if it shows there is no genuine issue that no accommodation was possible because it would impose an undue hardship. To require an employer to bear more than a de minimis cost is an undue hardship. Brown v. Polk County,

---

[2] See Weilert v. Health Midwest Development Group, 95 F.Supp.2d 1190, 1196 (D. Kan. 2000)("the employer and employee have a bilateral duty to cooperate in seeking a reasonable accommodation . . . [h]owever, the statutory burden to accommodate is on the employer . . . [t]he employee's duty to cooperate is not triggered until the employer makes an initial effort to accommodate.").

Iowa, 61 F.3d 650, 655 (8th Cir. 1995). The cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unaviable due to a religious conflict can amount to undue hardship. Id. De minimis costs entails more than monetary concerns, and includes the employer's burden in conducting its business. Id.

Kenner argues that Domtar already has a redundancy in place and that if Kenner were actually allowed to be off on Sundays, Domtar would save money on payroll. Kenneth Kenner Aff. ¶¶ 1-3. Kenner also argues–if he were allowed to take Sundays off–Domtar would not need to pay Kenner for his leave, thus reducing the amount of payroll per hour during the shift. Id. Domtar argues that if Kenner's machine was shut down during Kenner's shifts it would cause Domtar monetary losses between two and three million dollars. David Bowman Aff. ¶¶ 3-4. In this case, it is unclear whether alternative accommodations would have violated the collective bargaining agreement. Further, the costs to Domtar for the proposed accommodation is disputed. The Court finds disputed facts as to whether no accommodation could be had because it would cause an undue hardship on Domtar. Summary judgment on this step is also inappropriate.

**III.    Conclusion**

Upon consideration, for the foregoing reasons, the Court finds the Defendant's motion for summary judgment should be and hereby is **denied**.

**IT IS SO ORDERED** this 3rd day of March, 2006.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Judge